LINA FRANCO LAW P.C.
Lina M. Franco
Wilhelm J. Ceron
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (800) 933-5620
www.LinaFrancoLawPC.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ISIDRO VARGAS, ANTONIO JIMENEZ, AMADO ROSAS AND FREDDY PERALTA, *individually and on behalf of others similarly situated,*

        *Plaintiff,*

    -against-

RED BOWL CHINESE RESTAURANT INC. (d/b/a RED BOWL), VIVIAN CHAN and NGA CHIU (a/k/a DAVID CHIU)

        *Defendants.*
---------------------------------------------------------X

**COMPLAINT**

**Rule 23 Class Action & Collective Action under 29 U.S.C. § 216(b)**

    Isidro Vargas, Antonio Jimenez, Amado Rosas and Freddy Peralta, ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their attorneys, Lina Franco Law, P.C., upon their knowledge and belief, and as against Red Bowl Chinese Restaurant Inc., (d/b/a Red Bowl) ("Defendant Corporation"), Vivian Chan and Nga Chiu (a/k/a David Chiu) (each an "Individual Defendant" and collectively with "Defendant Corporation", "Defendants"), allege as follows:

**<u>NATURE OF THE ACTION</u>**

    1.   Plaintiffs are former employees of Defendants Red Bowl Chinese Restaurant Inc., (d/b/a Red Bowl) ("Defendant Corporation"), Vivian Chan and Nga Chiu (a/k/a David Chiu).

2.       Defendants own, operate, and/or control a Chinese style restaurant located at 208 Bedford Avenue, Brooklyn, New York 11211 under the name of Red Bowl.

3.       Plaintiffs were ostensibly employed by defendants as delivery workers.

4.       However, for delivery workers, the daily work performed by each of Plaintiffs entailed additional responsibilities that were not related to deliveries.

5.       Defendants employed and accounted for several Plaintiffs as delivery workers in their payroll, but in actuality their duties included greater or equal time spent in non-delivery, non-tipped functions

6.       At all times, regardless of duties, Defendants paid delivery workers at the lowered tip-credited rate.

7.       Under both the FLSA and NYLL Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

8.       Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them delivery workers instead of non-tipped employees.

9.       At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours per day.

11. For at least six years prior to the filing of this action, continuing to the present, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other delivery employees' tips and made unlawful deductions from Plaintiffs' and other delivery employees' wages.

12. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

13. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff' state law claims is conferred by 28 U.S.C. § 1367(a).

15. Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district,

Defendants operate their businesses in this district, and Plaintiff were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

16.     Isidro Vargas ("Plaintiff Vargas" or "Isidro Vargas") is an adult individual residing in Brooklyn, New York. He was employed by Defendants from approximately January 2014 until July 2016.

17.     Antonio Jimenez ("Plaintiff Jimenez" or "Antonio Jimenez") is an adult individual residing in Brooklyn, New York. He was employed by Defendants from approximately September 15, 2016 until February 17, 2017.

18.     Amado Rosas ("Plaintiff Rosas" or "Amado Rosas") is an adult individual residing in Brooklyn, New York. He was employed by Defendants from approximately March 8, 2016 until February 17, 2017.

19.     Freddy Peralta ("Plaintiff Peralta" or "Freddy Peralta") is an adult individual residing in Brooklyn, New York. He was employed by Defendants from approximately September 15, 2016 until February 17, 2017.

*Defendants*

20.     At all times, relevant to this complaint, Defendants owned, operated, and/or controlled a Chinese restaurant located at 208 Bedford Avenue, Brooklyn, New York, 11211, named "Red Bowl".

21. Upon information and belief, "Red Bowl Chinese Restaurant, Inc.," ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 208 Bedford Avenue, Brooklyn, New York, 11211.

22. Defendant Vivian Chan is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Vivian Chan is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

23. Upon information and belief, Defendant Vivian Chan possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

24. Defendant Vivian Chan determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employees' records, and had the authority to hire and fire employees.

25. Defendant Nga Chiu (a/k/a David Chiu) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nga Chiu (a/k/a David Chiu) is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

26. Upon information and belief, Defendant Nga Chiu (a/k/a David Chiu) possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

27.    Defendant Nga Chiu (a/k/a David Chiu) determined the wages and compensation of the employees of Defendants, including Plaintiffs and established the schedules of the employees, maintained employees' records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

28.    Defendants operate a Chinese Restaurant under the name "Red Bowl," located in Brooklyn.

29.    Upon information and belief, individual Defendants Vivian Chan and Nga Chiu (a/k/a David Chiu) possess operational control over the Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

30.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

33.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.    Upon information and belief, Individual Defendants Vivian Chan and Nga Chiu (a/k/a David Chiu) operate Defendant Corporation as either an alter egos of themselves, and/or fails to operate Defendant Corporation as entities legally separate and apart from themselves, by, among other things:

   a.   failing to adhere to the corporate formalities necessary to operate the Defendant Corporation as separate and legally distinct entity;

   b.   defectively forming or maintaining the Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

   c.   transferring assets and debts freely as between all Defendants;

   d.   operating the Defendant Corporation for his own benefit as the sole or majority shareholder;

   e.   operating the Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

   f.   intermingling assets and debts of his own with the Defendant Corporation;

   g.   diminishing and/or transferring assets to protect his own interests; and

   h.   other actions evincing a failure to adhere to the corporate form.

35.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for their services.

36.     In each year from 2011 to present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used and sold daily at "Red Bowl", such as meats and beverages, were produced outside the state of New York.

*Plaintiffs*

38.     Plaintiffs are former employees of Defendants, who were ostensibly employed as delivery workers.

39.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Isidro Vargas*

40.     Plaintiff Isidro Vargas was employed by Defendants from January 2014 until July 2016.

41.     During this time, Plaintiff Isidro Vargas was ostensibly employed by Defendants as a delivery worker.

42.     Plaintiff Isidro Vargas regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

43.     Plaintiff Isidro Vargas' work duties required neither discretion nor independent judgment.

44.     In July of 2016, Plaintiff Isidro Vargas fell ill and was in need of medical assistance, forcing him to take a sick day. Subsequently, Plaintiff Isidro Vargas was terminated by Defendants for having taken a sick day.

45.     Plaintiff Isidro Vargas regularly worked more than 40 hours per week.

46.     From approximately January 2014 until on or about May 2016, Plaintiff Isidro Vargas worked twelve (12) hours per day, six days a week (typically 72 hours per week).

47.     From approximately January 2014 until on or about May 2016, Plaintiff Isidro Vargas was paid a flat rate of $400 every other week.  At times, however, Defendants took 3 weeks to pay Mr. Vargas.

48.     Throughout his employment with Defendants, Plaintiff Isidro Vargas was paid his wages in cash.

49.     Plaintiff Isidro Vargas' pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happened very frequently.

50.     Defendants did not provide Plaintiff Isidro Vargas with a meal break or rest period of any kind throughout the entire time he worked there. In fact, Defendants specifically told Mr. Vargas not to "stand around" even when he did not have any food to deliver.

51.     Plaintiff Isidro Vargas was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

52.     Further, Defendants did not provide Isidro Vargas with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

53.     Plaintiff Isidro Vargas was never notified by Defendants that his tips would be included as an offset for wages.

54.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Isidro Vargas' wages.

55.     Defendants kept a portion of Mr. Vargas' tips every week. Mr. Vargas noticed that he was never paid the full amount of the tips that he earned. Upon information and belief, defendants kept approximately 10% of all tips earned by Mr. Vargas.

56.     No notification, either in the form of posted notices or other means, was given to Plaintiff Isidro Vargas regarding overtime and wages under the FLSA and NYLL.

57.     Defendants never provided Plaintiff Isidro Vargas with each payment of wages a statement of wages, as required by NYLL 195(3).

58.     Defendants never provided Plaintiff Isidro Vargas, any notice in English and in Spanish (Isidro Vargas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

59.     Defendants required Plaintiff Isidro Vargas to purchase "tools of the trade" with his own funds—including a bicycle for $500, helmet for $45 and two locks and chains for $65 each. Thus, the total cost of the "tools of the trade" Plaintiff Isidro Vargas was required to purchase as a delivery worker was approximately $675.

*Plaintiff Antonio Jimenez*

60.     Plaintiff Antonio Jimenez was employed by Defendants from September 15, 2016 until February 17, 2017.

61.     During this time, Plaintiff Antonio Jimenez ostensibly was employed by Defendants as a delivery worker.

62.     Plaintiff Antonio Jimenez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

63.     Plaintiff Antonio Jimenez' work duties required neither discretion nor independent judgment.

64.     Plaintiff Antonio Jimenez regularly worked more than 40 hours per week.

65.     From approximately September 15, 2016 until on or about February 17, 2017, Plaintiff Antonio Jimenez worked twelve (12) hours per day, six days a week (typically 72 hours per week).

66.     From approximately September 15, 2016 until on or about February 17, 2017, Plaintiff Antonio Jimenez was paid a flat rate of $400 every other week.

67.     Throughout his employment with Defendants, Plaintiff Antonio Jimenez was paid his wages in cash.

68.     Plaintiff Antonio Jimenez' pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

69.     Defendants did not provide Plaintiff Jimenez with a meal break or rest period of any kind throughout the entire time he worked there. In fact, Defendants specifically told Mr. Jimenez  not to "stand around" even when he did not have any food to deliver.

70.     Plaintiff Antonio Jimenez was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

71.     Further, Defendants did not provide Antonio Jimenez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

72.     Plaintiff Antonio Jimenez was never notified by Defendants that his tips would be included as an offset for wages.

73.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Antonio Jimenez' wages.

74. Defendants kept a portion of Mr. Jimenez' tips every week. Mr. Vargas noticed that he was never paid the full amount of the tips that he earned. Upon information and belief, defendants kept approximately 10% of all tips earned by Mr. Jimenez.

75. No notification, either in the form of posted notices or other means, was given to Plaintiff Antonio Jimenez regarding overtime and wages under the FLSA and NYLL.

76. Defendants never provided Plaintiff Antonio Jimenez with each payment of wages a statement of wages, as required by NYLL 195(3).

77. Defendants never provided Plaintiff Antonio Jimenez, any notice in English and in Spanish (Antonio Jimenez' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78. Defendants required Plaintiff Antonio Jimenez to purchase "tools of the trade" with his own funds—including a bicycle for $200, helmet for $45 and two locks and chains for $65 each. Thus, the total cost of the "tools of the trade" Plaintiff Antonio Jimenez was required to purchase as a delivery worker was approximately $375.

*Plaintiff Amado Rosas*

79. Plaintiff Amado Rosas was employed by Defendants from March 8, 2016 until February 17, 2017.

80. During this time, Plaintiff Amado Rosas was ostensibly employed by Defendants as a delivery worker.

81. Plaintiff Amado Rosas regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

82. Plaintiff Amado Rosas' work duties required neither discretion nor independent judgment.

83.     Plaintiff Amado Rosas regularly worked more than 40 hours per week.

84.     From approximately March 8, 2016 until on or about February 17, 2017, Plaintiff Amado Rosas worked twelve (12) hours per day, six days a week (typically 72 hours per week).

85.     From approximately March 8, 2016 until on or about February 17, 2017, Plaintiff Amado Rosas was paid a flat rate of $400 every other week.    At times, however, it took Defendants 3 weeks to pay Mr. Vargas his wages.

86.     Throughout his employment with Defendants, Plaintiff Amado Rosas was paid his wages in cash.

87.     Plaintiff Amado Rosas' pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

88.     Defendants did not provide Plaintiff Rosas with a meal break or rest period of any kind throughout the entire time he worked there. In fact, Defendants specifically told Mr. Rosasnot to "stand around" even when he did not have any food to deliver.

89.     Plaintiff Amado Rosas was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

90.     Further, Defendants did not provide Amado Rosas with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

91.     Plaintiff Amado Rosas was never notified by Defendants that his tips would be included as an offset for wages.

92.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Amado Rosas' wages.

93.     Defendants kept a portion of Mr. Rosa's tips every week. Mr. Rosas noticed that he was never paid the full amount of the tips that he earned. Upon information and belief, defendants kept approximately 10% of all tips earned by Mr. Rosas.

94.     No notification, either in the form of posted notices or other means, was given to Plaintiff Amado Rosas regarding overtime and wages under the FLSA and NYLL.

95.     Defendants never provided Plaintiff Amado Rosas with each payment of wages a statement of wages, as required by NYLL 195(3).

96.     Defendants never provided Plaintiff Amado Rosas, any notice in English and in Spanish (Amado Rosas' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

97.     Defendants required Plaintiff Amado Rosas to purchase "tools of the trade" with his own funds—including a helmet for $45 and two locks and chains for $65 each. Thus, the total cost of the "tools of the trade" Plaintiff Amado Rosas was required to purchase as a delivery worker was approximately $175.

*Plaintiff Freddy Peralta*

98.     Plaintiff Freddy Peralta was employed by Defendants from September 15, 2016 until February 17, 2017.

99.     During this time, Plaintiff Freddy Peralta was ostensibly employed by Defendants as a delivery worker.

100.    Plaintiff Freddy Peralta regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

101.    Plaintiff Freddy Peralta's work duties required neither discretion nor independent judgment.

102.     Plaintiff Freddy Peralta regularly worked more than 40 hours per week.

103.     From approximately September 15, 2016 until on or about February 17, 2017, Plaintiff Freddy Peralta worked twelve (12) hours per day, six days a week (typically 72 hours per week).

104.     From approximately September 15, 2016 until on or about February 17, 2017, Plaintiff Freddy Peralta was paid a flat rate of $400 every other week.

105.     Throughout his employment with Defendants, Plaintiff Freddy Peralta was paid his wages in cash.

106.     Plaintiff Freddy Peralta's pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

107.     Defendants did not provide Plaintiff Perealta with a meal break or rest period of any kind throughout the entire time he worked there. In fact, Defendants specifically told Mr. Peralta not to "stand around" even when he did not have any food to deliver.

108.     Plaintiff Freddy Peralta was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

109.     Further, Defendants did not provide Freddy Peralta with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

110.     Plaintiff Freddy Peralta was never notified by Defendants that his tips would be included as an offset for wages.

111.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Freddy Peralta's wages.

112.    Defendants kept a portion of Peralta's tips every week. Mr. Peralta noticed that he was never paid the full amount of the tips that he earned. Upon information and belief, defendants kept approximately 10% of all tips earned by Mr. Peralta.

113.    No notification, either in the form of posted notices or other means, was given to Plaintiff Freddy Peralta regarding overtime and wages under the FLSA and NYLL.

114.    Defendants never provided Plaintiff Freddy Peralta with each payment of wages a statement of wages, as required by NYLL 195(3).

115.    Defendants never provided Plaintiff Freddy Peralta, any notice in English and in Spanish (Freddy Peralta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

116.    Defendants required Plaintiff Freddy Peralta to purchase "tools of the trade" with his own funds—including a helmet for $45 and two locks and chains for $65 each. Thus, the total cost of the "tools of the trade" Plaintiff Freddy Peralta was required to purchase as a delivery worker was approximately $175.

*Defendants' General Employment Practices*

117.    At all times, relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime, and spread of hours' compensation, as required by federal and state laws.

118.    Defendants' pay practices resulted in Plaintiffs not receiving payments for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

119.     Plaintiffs have been victim of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

120.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

121.     Defendants unlawfully misappropriated charges purported to be gratuity, received by Plaintiffs and other delivery workers in violation of New York Labor Law § 196-d (2007).

122.     Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

123.     Defendants failed to provide Plaintiffs with statutorily required wage and hour records or statements of her pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

124.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

125.     Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for (i) her full hours worked, (ii) for overtime due, and (iii) for spread of hours pay.

126. Defendants did not provide Plaintiffs with any document or other statement accurately accounting for their actual hours worked, and setting forth rate of minimum wage and overtime wage.

127. Plaintiffs were paid their wages entirely in cash.

128. Defendants employed Plaintiffs as delivery workers and required them to provide their own locks, chains and helmets, and refused to compensate them or reimburse them for these expenses.

129. Defendants did not provide Plaintiff with any break periods.

## FLSA COLLECTIVE ACTION CLAIMS

130. Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA").

131. At all relevant times, Plaintiffs, and other members of the FLSA were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

132. The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

133. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.     At all times relevant to this action, Defendants were Plaintiffs employers (and employers of the putative FLSA) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

135.     Defendants had the power to hire and fire Plaintiff's (and the FLSA class members), control their terms and conditions of employment, and determine the rate and method of any compensation.

136.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

137.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

138.     Defendants failed to pay Plaintiffs (and the FLSA class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

139.     Defendants' failure to pay Plaintiffs (and the FLSA class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

140.     Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Violation of the Overtime Provisions of the FLSA)**

141.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.     Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

143.     Defendants' failure to pay Plaintiffs (and the FLSA class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

144.     Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York Minimum Wage Act)

145.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

146.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

147.     Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

148.     Defendants, in violation of the NYLL, paid Plaintiffs (and the FLSA class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

149.     Defendants' failure to pay Plaintiffs (and the FLSA class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

150.     Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of the Overtime Provisions of the New York Labor Law)

151.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.     Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

153. Defendants failed to pay Plaintiffs (and the FLSA class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

154. Defendants' failure to pay Plaintiffs (and the FLSA class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

155. Plaintiffs (and the FLSA class members) have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
**(Violation of the Spread of Hours Wage Order of the New York Commissioner of Labor)**

156. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157. Defendants failed to pay Plaintiffs (and the FLSA class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

158. Defendants' failure to pay Plaintiffs (and the FLSA class members) an additional hour's pay for each day Plaintiffs' (and the FLSA class members) spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

159. Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Violation of the Unauthorized Deduction Provisions of the New York Labor Law)**

160. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

162.    Defendants made unauthorized deductions from Plaintiffs' pay in violation of NYLL § 193.

163.    Defendants' conduct in making unauthorized deductions from Plaintiffs' pay was done knowingly and intentionally.

164.    Plaintiffs have been damaged in an amount to be determined at trial.

165.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF RECORDKEEPING/WAGE STATEMENT PROVISIONS OF NYLL)

166.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control terms and conditions of employment, and determine the rates and methods of any compensation in exchange for employment.

168.    Defendants failed to pay Plaintiffs (and the Class) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

169.    Defendants' failure to pay Plaintiffs (and the Class) an additional hour's pay for each day Plaintiffs' (and the Class) spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

170.   Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as require by NYLL §195(1).

171.   Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

172.   Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

173.   Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as require by NYLL 195(3).

174.   Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

175.   Defendants acted willfully in their violation of the above-described NYLL requirements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiff in the FLSA claims in this action;

(b)   Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff and the FLSA and Rule 23 class members;

(c)   Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff and the FLSA and Rule 23 class

members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff' and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiff and the FLSA and Rule 23 class members;

(f)    Awarding Plaintiff and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiff and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of her damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff and the members of the FLSA Class;

(i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff and the members of the FLSA Class;

(j)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff and the members of the FLSA Class;

(k)    Declaring that Defendants have violated the recordkeeping requirements of the

NYLL with respect to Plaintiff' and the FLSA and Rule 23 class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiff and the FLSA and Rule 23 class members;

(m)     Awarding Plaintiff and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiff and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiff and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiff and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 7, 2017

LINA FRANCO LAW, P.C.

By:    /s/Lina M. Franco
Lina M. Franco, Esq.
Wilhelm J. Ceron, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Telephone: 1800-933-5620
www.LinaFrancoLawPC.com
*Attorneys for Plaintiffs*